The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger and upon the briefs of counsel, both of whom waived oral argument before the Commission and submitted the case on their briefs. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
A Pre-Trial Agreement was entered into by the parties prior to the 10 January 1995 hearing in this matter and is incorporated herein by reference. Following the hearing, the record in this matter was held open in order to allow the parties an opportunity to depose medical experts and submit employment records. Upon the receipt of the deposition of Dr. Martin and a Form 22 as well as written contentions from counsel for the parties, the record in this matter was duly closed,
All objections raised during the deposition of Dr. Martin are ruled upon in accordance with the law and the Opinion and Award rendered in this matter.
* * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing below as:
STIPULATIONS
1. As aforementioned, all stipulations contained in the Pre-Trial Agreement are incorporated herein by reference.
2. The parties stipulated to and the following documents were admitted into evidence:
 (a) Medical records from Sloop Memorial Hospital marked as Stipulated Document Number 1 (three pages).
 (b) Medical records of Dr. Nagy marked as Stipulated Document Number 2 (four pages).
 (c) Medical records of Dr. Robert Egidio marked as Stipulated Document Number 3 (two pages).
 (d) Medical records from Mountain Neurological Center marked as Stipulated Document Number 4 (six pages).
 (e) Medical records from Dr. Edward Perez marked as Stipulated Document Number 5 (sixteen pages).
3. Subsequent to the hearing, the parties submitted a Form 22 marked as Stipulated Document Number 6 (two pages).
* * * * * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission rejects the findings made by the Deputy Commissioner and makes the following:
FINDINGS OF FACT
1. At the time of the 10 January 1995 hearing, plaintiff was a twenty-eight (28) year old female with an eleventh (11th) grade education.
2. Plaintiff began working at U.S. Textiles on July 20, 1993. Her job was picking up pieces of women's hosiery out of a box, placing the legs together, and sliding them onto a machine so that they could be sewn together. The job involved continuous repetitive motion, and had to be performed quickly to make production, which was defined as at least 30 dozen per hour. Plaintiff consistently made over production, which meant that she was sewing over 2000 pairs of hose together each day. After plaintiff had worked at U.S. Textiles several months, she began to experience pain and numbness and pain in her right hand. She reported the problem to her supervisor, who gave her Advil or Tylenol. She kept working for about another week, but the pain increased to the point she could not work, and on December 13, she sought treatment from her family doctor.
3. When Ms. Clark learned her family doctor was out of town, she went to the Sloop Hospital Emergency Room, where Dr. Robert J. Egidio diagnosed her as having "overuse syndrome of the right wrist."
4. On December 13, 1993, plaintiff reported to her immediate supervisor, Darryl Banner, that her wrist was hurting and she could hardly do her job. Plaintiff also reported to the Department Head, Joey Horney, that her wrist was very sore and had small cyst-like knots. Both supervisors had an opportunity to observe the knots on plaintiff's hand.
5. On December 16, 1993, plaintiff sought medical treatment from her family physician, Dr. Perez, for numbness in her hand. Dr. Perez diagnosed the plaintiff as having sustained a wrist strain. Dr. Perez saw plaintiff on January 13, 1994, and at that time restricted plaintiff from returning to work for one (1) week, noting in his file that "for the past two to three weeks she has been having so much pain that she cannot hold and do her job correctly. At the end of then night she is having extreme excruciating pain, unable to complete her job in proper fashion." The following week, on January 21, 1994, plaintiff returned to see Dr. Perez who assessed the plaintiff as having classical symptoms of carpal tunnel syndrome. Dr. Perez referred the plaintiff to see Dr. Dennis Martin, a neurologist, at Mountain Neurological in Asheville, on January 28, 1994.
6. On January 27, 1994, plaintiff was sent by U.S. Textiles to Dr. Barbara Nagy at Newland Family Medical Center. She noted that plaintiff's past medical history was essentially negative. Dr. Nagy's impression upon examination was peripheral neuropathy of the right hand, and she wrote a letter to George Freeman, Assistant Plant Manager of U.S. Textiles, restricting plaintiff from repetitive motions of the right hand at least until she was examined by the neurologist in Asheville to whom Dr. Perez had referred her.
7. Plaintiff discussed the appointment with the neurologist (Dr. Martin at Mountain Neurological) several times with assistant plant manager George Freeman, and it was her understanding that she was supposed to schedule an appointment and go to Mountain Neurological, and that U.S. Textiles was authorizing her to do so. However, when she reported to Mountain Neurological for her appointment, U.S. Textiles had not arranged for payment, and the doctor would not see her. Plaintiff returned to work and asked for instructions, and was told by Mr. Freeman to schedule another appointment. She did so, returned to Mountain Neurological a second time, and was refused a second time because the employer had not authorized the examination. Plaintiff was not examined at Mountain Neurological until October 19, 1994, after she obtained counsel and had a pretrial conference.
8. Dr. Martin's impression was the plaintiff had mild carpal tunnel syndrome. He examined her again on January 25, 1995, and determined that she had developed a reflex sympathetic dystrophy and that her work-related carpal tunnel syndrome led to the development of the reflex sympathetic dystrophy. His unequivocal opinion was, and the Full Commission finds as facts, that the repetitive motion engaged in by plaintiff while employed by defendant employer caused her carpal tunnel disease which in turn caused her reflex sympathetic dystrophy, and that plaintiff's employment with the defendant exposed her to a greater risk of contracting these diseases than the public generally. Dr. Martin also testified, and the Full Commission finds as a fact, that plaintiff's occupational diseases kept her from being able to earn wages on any regular basis in her present condition.
9. Dr. Martin has not yet assigned a disability rating to plaintiff. Instead, he has referred her to Dr. Robert Gunther, an anesthesiologist associated with the hand center in Asheville, who is a specialist in treating RSD. It is Dr. Martin's opinion that it is medically necessary for plaintiff to be treated by Dr. Gunther. At this time, plaintiff has been treated once by Dr. Gunther, but no medical records have yet been received by Dr. Gunther and he has apparently not assigned plaintiff a rating. It is premature at this time to issue an award for permanent partial disability in plaintiff's case.
10. On January 24, 1994, plaintiff was terminated for alleged excessive absenteeism. A written explanation for the separation stated that plaintiff did not notify the company for being absent on January 9, 1994 through January 14, 1994. Plaintiff's employment records show that plaintiff was out on medical leave during this time period. Plaintiff's loss of her job was not due to any misconduct by the plaintiff. Plaintiff was unable to work January 3, 1994 through January 14, 1994 because of pain she was suffering in her right hand resulting from her occupational disease. Her termination from employment under those conditions violated the Workers Compensation Act.
11. The defendant-employer did not offer plaintiff a job within the restriction imposed by Dr. Nagy.
12. Plaintiff cleaned houses one (1) day every two (2) weeks for a couple of months after being terminated by the defendant-employer.
13. In April 1994, plaintiff began working for Grandfather Mountain Golf and Country Club as a housekeeper. Plaintiff worked for Grandfather Mountain Golf and Country Club from April 1994 to mid-October 1994.
14. No evidence was presented at the hearing that plaintiff attempted to find work after leaving Grandfather Mountain Golf and Country Club.
15. Plaintiff was paid at a rate of $5.40 per hour plus 10 cents for each dozen pair of hose over production, so that her average rate per hour was $5.50. Plaintiff worked 35 hours per week on average, yielding an average weekly wage of $192.50 and a compensation rate of $128.33.
16. Plaintiff's job with defendant-employer caused or significantly contributed to her development of her occupational disease. Further plaintiff's job exposed her to an increased risk of developing said disease than members of the public generally.
17. As the result of her occupational disease, plaintiff has been unable to earn wages in her former job with defendant-employer or in any other position since 13 December 1993 except for brief periods of sporadic employment.
* * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. In order to establish that she suffers from an occupational disease plaintiff must prove that the disease is (1) characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be "a causal connection between the disease and the [employee's] employment."Rutledge v. Tultex Corp., 308 N.C. 85, 93, 301 S.E.2d 359,365 (1983). The first two elements are met "if, as a matter of fact, the employment exposed the worker to a greater risk of contracting the disease than the public generally." Id. at 93-94,301 S.E.2d at 365. The third is satisfied if the employment "significantly contributed to or was a significant causal factor in the disease's development. This is so even if other non-work-related factors also make significant contributions, or were significant causal factors." Id. at 101, 301 S.E.2d at 369-70.
2. Plaintiff has met her burden of proof with respect to all three prongs of the Rutledge test.
3. Plaintiff is entitled to continuing medical compensation from December 13, 1993, for her occupational disease and disability compensation at the rate of $128.33 per week for all weeks that she was or is unable to work by reason of his occupational disease, beginning December 13, 1993. Defendants are entitled to credit for wages earned during periods of sporadic employment.
4. The assessment of an award for permanent partial disability should be deferred pending medical evaluation and treatment.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of Deputy Commissioner Berger and enters the following:
AWARD
1. Defendants shall pay for plaintiff's medical treatment resulting from her occupational disease and reasonable fees for the medical depositions if not heretofore paid.
2. Defendants shall provide disability compensation of $128.33 per week for each week that plaintiff continues to remain unable to work by reason of her occupational disease, beginning December 13, 1993, and continuing until further orders of the Industrial Commission. Such compensation as has already accrued shall be paid in a lump sum, subject to the attorney's fee hereafter awarded.
3. Plaintiff's attorney is entitled to a reasonable fee of 25% of the disability compensation. One fourth of the lump sum payment ordered in the preceding paragraph shall be paid directly to such attorney and thereafter such attorney shall receive every fourth compensation check. Interest on the entire amount of the award shall be payable from 10 January 1995 (the date of the hearing before Deputy Commissioner Berger) until paid. The entire interest shall be paid to plaintiff.
4. The issue of permanent partial disability, if any, shall be left open pending further medical evaluation and treatment.
5. Defendants shall pay the costs.
 S/ __________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ __________________________ COY M. VANCE COMMISSIONER
DISSENTING:
S/ __________________________ DIANNE C. SELLERS COMMISSIONER